UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-MJ-8071-BER

UNITED STATES OF AMERICA

v.

Darwin Salgado AVILA, Anthony
LAMAR, and Rahsaan ROBINSON,

        Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)? ___ Yes ✓ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? ___ Yes ✓ No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? ___ Yes ✓ No

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

BY: *Adam C. McMichael*

ADAM McMICHAEL
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.   0772321
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel:    (561) 820-8711
Fax:   (561) 820-8777
Email:  Adam.McMichael@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>Darwin Salgado AVILA, Anthony LAMAR,<br>and Rahsaan ROBINSON<br><br>Defendant(s) | )<br>)<br>) Case No.  22-MJ-8071-BER<br>)<br>)<br>) |

FILED BY _____SP_____ D.C.

Mar 3, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___December 14, 2020___ in the county of ___Palm Beach___ in the ___Southern___ District of ___Florida___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1201(a)(1) | Kidnapping, |
| 18 U.S.C. § 1201(c) | Conspriacy to Commit Kidnapping, |
| 18 U.S.C. § 2119 | Carjacking, |
| 18 U.S.C. § 1951(a) | Hobbs Act Robbery, |
| 18 U.S.C. §§ 924(c)(1)(A)(ii), (B)(i) | Brandishing a Firearm, that is, a Semiautomatic Assault Weapon, in Furtherance of a Crime of Violence, |

This criminal complaint is based on these facts:

See attached affidavit in support of criminal complaint

☑ Continued on the attached sheet.

_____
Complainant's signature

Richard Silva, Task Force Officer, ATF
Printed name and title

Sworn to and signed before me by
Telephone (Facetime) per
Fed. R. Crim. P. 4(d) & 4.1

Date: 3/3/22

_____
Judge's signature

City and state:  West Palm Beach, Florida

Bruce Reinhart, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT
## OF CRIMINAL COMPLAINT

Your affiant, ATF Task Force Officer RICHARD SILVA, being first duly sworn, do hereby depose and state as follows:

### Introduction

1.  I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have served in that capacity since January 2011. I am also a duly sworn Deputy Sheriff in and for Palm Beach County, Florida. I am also cross designated as a Special Deputy United States Marshal. As a Task Force Officer, I am authorized to conduct investigations and make arrests pertaining to violations of federal law, including violations of Title 18 of the United States Code.

2.  This Affidavit is submitted in support of a criminal complaint and the arrest of Darwin Salgado AVILA, Anthony LAMAR, and Rahsaan ROBINSON. I submit there is probable cause based upon the facts contained within this Affidavit to believe that these individuals committed the following federal offenses; (i) Kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1), (ii) Conspiracy to Commit Kidnapping, in violation of Title 18, United States Code, Section 1201(c), (iii) Carjacking, in violation of Title 18, United States Code, Section 2119, (iv) Hobbs Act Robbery, in violation of Title 18, United States Code, Section 1951(a), and (v) Brandishing a Firearm, that is, a Semiautomatic Assault Weapon, in Furtherance of a Crime of Violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and (B)(i).

3.  The facts contained in this Affidavit come from my own investigation, training, and experience, as well as information obtained during the investigation through search warrants, public records, Grand Jury subpoenas returns, reports, visual evidence, and information obtained from other members of local, state, and federal law enforcement, witnesses, and the victims. Because this affidavit is submitted for the limited purpose of obtaining a criminal complaint, it

does not contain all the facts known to me about the investigation, but rather, those facts that I submit establish probable cause of the offenses listed above.

## Probable Cause

4.  On December 14, 2020, at approximately 7:22 am, Victim #1 and Victim #2 were found along the side of a residential roadway, in a vehicle. Their hands and feet were bound by zip ties and tape. The vehicle was a black Dodge Challenger that was owned by Victim #1's grandmother but utilized by Victim #1. A passerby observed Victim #2 crawl out of the trunk of the Challenger. The citizen helped cut the victims' restraints and called 911.

5.  The Palm Beach County Sheriff's Office (PBSO) responded to the 911 call and began an investigation. Victim #1 and Victim #2 provided recorded statements at the scene. They advised that they had been kidnapped earlier that morning by three individuals. Victim #1 knew all three subjects as friends from California and identified them by their nicknames, "Debo," "Mojo," and "Loso." Investigation has since identified "Debo" as Darwin Salgado AVILA (hereinafter "AVILA"), "Mojo" as Anthony LAMAR (hereinafter "LAMAR"), and "Loso" as Rahsaan ROBINSON (hereinafter "ROBINSON").

6.  The kidnapping occurred at an Airbnb earlier that morning, December 14, 2020. The Airbnb was located at 5030 Royal Palm Beach Boulevard, West Palm Beach, Florida. The residence is located within Palm Beach County and the Southern District of Florida. According to Victim #1, AVILA contacted him through Instagram, a social networking platform. AVILA informed Victim #1 that he and others were in Florida and that they should meet. Victim #1 was well acquainted with AVILA and agreed. Victim #1 and Victim # 2 then drove to the Airbnb residence in Victim #1's Dodge Challenger. Once they arrived at the residence, they were met outside by AVILA. The three men then went inside the Airbnb and met LAMAR.

2

7. According to Victim #1 and Victim #2, they all remained in the living room area for a while. AVILA and LAMAR then produced firearms and at least one police style taser. Victim #1 described the firearms that were possessed by AVILA and LAMAR as "Glock" type handguns. ROBINSON also appeared and was in possession of a semiautomatic assault pistol that was loaded with a drum magazine.

8. All three gunmen ordered Victim #1 and Victim #2 to get on the ground. Victim #1 explained that he was tasered multiple times. Victim #2 also reported that he was tasered and threated at gunpoint. Once the victims' complied, all three subjects assisted with binding Victim #1 and Victim #2 with zip ties and tape. After the victims were immobilized, all three subjects started cleaning the inside of the residence. Specifically, Victim #1 reported that the subjects used bleach and other cleaning supplies. Once they were done, AVILA said they were all going to Victim #1's grandmother's house.

9. Victim #1 and Victim #2 were forced into Victim #1's Dodge Challenger. Both victims were still retrained, and Victim #1 reported that it took all three subjects to get them inside the car. Victim # 1 was placed in the back passenger seat. Victim #2 was put inside the trunk. Victim #1 explained that his vehicle was then driven by AVILA and ROBINSON was a passenger. Victim #1 later observed a second vehicle that followed his car. The second vehicle was a maroon Honda Accord driven by LAMAR.

10. Before being placed in the trunk of the Dodger Challenger, Victim #2's property was taken by the subjects. His property included a wallet, Florida Driver's License, $800.00 in United States currency, jewelry, and a cellphone. Victim #2's jewelry specifically included a gold rope chain with a 10-caret gold cross and 10-caret gold Jesus' pendant, a gold rope bracelet and a

3

gold ring. Victim # 1 also reported that his cellphone, car keys and United States currency were taken by the subjects without his consent.

11. AVILA, LAMAR, ROBINSON, Victim #1, and Victim #2 all arrived at the grandmother's house in Belle Glade, Florida. AVILA, armed with a handgun, knocked on the front door of the residence to gain entry. Victim #3 opened the door and AVILA forced his way inside. ROBINSON, who was armed with the semiautomatic assault pistol, was also present and went inside Victim #3's residence. Victim #1 was brought inside by AVILA and ROBINSON. Victim #1 was still retrained and placed lying face down on the floor.

12. AVILA and ROBINSON demanded that Victim #3 sit down on a couch. Victim #4 was also inside the residence and reported hearing men talking about her son and demanding to know where something was inside the home. Victim #4 stated that she saw two men that were wearing masks and armed with firearms inside her home. Ultimately, Victim #4 was directed to sit down in the living room with Victim #3. In Victim #1's statement, he reported that he saw ROBINSON grab Victim #4. Victim #1 also reported that he saw AVILA push Victim #3.

13. Victim #1 broke free of his restraints and fought with AVILA and ROBINSON. At one point, Victim #1 ran out of the residence to yell for help. Victim #2, who was never removed from the trunk, overheard Victim #1 trying to get help. Victim #2 also heard what he reported as Victim #1 being beaten by the subjects both inside and outside Victim #3's residence. Victim #1 reported that he was struck numerous times by the subjects, including being pistol whipped and hit in the eye by the butt of the assault rifle. Victim #1 explained that he continued to fight with AVILA and ROBINSON outside his grandmother's house. Victim #1 also stated the fight ended when LAMAR choked him until he lost consciousness.

14. According to Victim #3 and Victim #4, the subjects located a black safe inside Victim #3's residence. Victim #3 and Victim #4 stated that the subjects took the safe and left along with Victim #1. During the robbery, the subjects demanded their cellphones. Victim #3 recalled that the subjects left in the same vehicles that they arrived in and headed east. Victim #1 recalled that he regained consciousness when he was back inside his vehicle as they headed back towards Royal Palm Beach, Florida. Victim #1 saw several cellphones being tossed out the window by the subjects as they were driving.

15. Victim #1 reported that they returned to Royal Palm Beach, Florida. AVILA parked the Dodge Challenger along the side of the road and then the maroon Honda pulled alongside. Victim #1 noticed that his safe, which was once inside Victim #3's residence, was inside the Honda. Victim #1 observed AVILA and ROBINSON get into the maroon Honda and drive off. Victim #1 provided a partial license plate number of the Honda, that is, "GRY." Thereafter, Victim #2 opened the trunk of the Dodge Challenger and escaped. It should be noted that the location where Victim #1 and Victim #2 were found was within a few streets of the Airbnb.

16. Victim #1 reported that the safe stolen from Victim #3's house was his and contained approximately $70,000 in United States currency. In recent days, Victim #1 met with your affiant and the United States Attorney's Office for the Southern District of Florida in preparation for testimony before the Grand Jury. During the meeting, Victim #1 admitted that the $70,000 stolen by AVILA, LAMAR, and ROBINSON were proceeds from the sale of marijuana.

17. All three subjects traveled to Florida from another state to commit the kidnapping and robbery. Specifically, on December 9, 2020, AVILA and LAMAR flew on Spirit Airlines from Cleveland, Ohio to Fort Lauderdale, Florida. ROBINSON flew separately on December 10, 2020, abord a Southwest Airlines flight from Oakland, California to Miami, Florida.

18. As part of the investigation, your affiant queried the PBSO License Plate Reader (LPR) database for December 14, 2020. The search revealed that a fixed LPR site captured Victim #1's Dodge Challenger as it drove westbound towards Belle Glade, Florida. The LPR monitor recorded the vehicle's license plate number, which matched, and noted that the vehicle was on SR-80 past the twenty-mile bend at 5:54:33 am. The same fixed LPR monitor captured a Honda Accord, with Florida license plate number "GRYV53," also traveling westbound on SR-80 seconds later, at approximately 5:54:35 am. This fixed LPR monitor is approximately 17 miles from Victim #3's residence in Belle Glade, Florida. It should be noted that the first three characters, "GRY," of the Honda matched the partial license plate number provided by Victim #1.

19. On December 16, 2020, AVILA and LAMAR were arrested at a Travelodge Hotel located in Richmond Hill, George. Their arrest was conducted by the United States Marshals based upon State arrest warrants issued in Palm Beach County, Florida. After their arrest, both AVILA and LAMAR were booked into the Chatham County Jail and their property was inventoried. Within AVILA's property was a yellow-colored necklace. Within LAMAR's property were a yellow-colored bracelet and ring.

20. AVILA and LAMAR were also in possession of a Mitsubishi Outlander with Florida license plate number GWBV85. The vehicle was impounded by the Chatham County Sheriff's Office. A search warrant was obtained, and the Mitsubishi was searched on December 17, 2020. The following items of evidence were located inside:

a. five kitchen knives,

b. a plastic bag from Shoot Straight Gun Range,

c. a self-defense taser, by TASER International,

d. three ski masks (1-red,1-black,1green),

6

e. a roll of tape and roll of plastic wrap,

f. Victim #2's Florida driver's license, and

g. Three Apple iPhones.

21.     All three subjects had profiles and accounts on Instagram. AVLIA's account was under the name "drawdown_bo1." LAMAR's account was under the name "mojo.set.it.off," and ROBINSON's account was under the name "ggorillachildloso."

22. On December 18, 2020, PBSO sought and obtained a state search warrant for information associated with ROBINSON's account under the name "ggorillachildloso." Your affiant located a video file that was posted on ROBINSON's Instagram account, dated December 11, 2020, that said, "Nigga won't make it outta dis bitch 🐻." The video depicted ROBINSON recording himself inside the Airbnb located in Royal Palm Beach, Florida. The video showed a wooden coffee table in the living room that had a handwritten note. The note said, "No Dishes!! No Touching Door Handle, No Touching Nothin, Cover Chairs, Floor (Ajax) (Bleach) cabinets refrigerator, Chairs/table/T.V. remote." Also, within the video, a large roll of plastic wrap can be seen next to the coffee table. At one point, LAMAR can be observed sitting on the sofa wearing clear latex gloves. ROBINSON also walked into a bedroom and handled a Glock pistol. ROBINSON then returned to the living room and aimed the camera at plastic wrap and tape on the floor. ROBINSON said, "Definitely using that, (laughing) definitely using that on his ass."

23.     Your affiant located another video file within ROBINSON's Instagram saved as "archived_stories_17898555376633735." The file was dated December 14, 2020, 21:16:53 UTC, and depicted AVILA while he recorded LAMAR standing next to him. ROBINSON is also present and seated in a chair wearing a camouflage balaclava and two gold rope necklaces. At least one of the necklaces had a Jesus' face pendant and a gold cross. Additionally, the video showed

7

ROBINSON holding multiple stacks of United States currency with red and blue money bands. Other stacks of United States currency were also visible and lying on the floor. Your affiant further observed the subjects in possession of a Palmetto State Armory, PA-15, assault weapon with a high-capacity drum magazine and a black handgun. Lastly, your affiant noted in the video that the subjects had a black metal safe on the floor and a DeWalt reciprocating saw.

24. On January 19, 2021, PBSO obtained a state search warrant for the three cellular telephones seized in Georgia during the arrest of AVILA and LAMAR. One of the items was a black Apple, iPhone SE (2nd generation), Model: D79AP. Your affiant reviewed an extraction report for this device and noted that the device had AVILA's Gmail account "drawdownbo38@gmail.com" and Instagram "drawdown_bo1" registered to the device. Your affiant also noticed that on December 14, 2021, at 11:52:48 PM (UTC-5), AVILA had an iMessage conversation. During that conversation, AVILA shared his location and provided location information highlighting a latitude/longitude of 26.053102, -80.129982. Those coordinates were identified as a Motel 6 hotel located at 825 E. Dania Beach Boulevard, Dania, Florida. Additionally, on December 14, 2020, 2:16:19 PM (UTC), AVILA sent a text message that said, "Shit counting up brotha mission accomplished. I needed a hotel earlier that's why I was blowin u up my bad it was real I'm in Fort Lauderdale rn."

25. On March 15, 2021, your affiant obtained records from the Motel 6 in Dania, Florida. Records show that on December 14, 2020, at 10:52 (EST), AVILA checked into room #284 using his California driver's license. Motel 6 management gave consent to enter room #284. At that point, your affiant was able to confirm that the videos and images found in ROBINSON's Instagram, posted on December 14, 2020, were taken within hotel room #248.

26. On February 23, 2021, the Livermore Police Department executed a residential search warrant in Pittsburg, California. The residence was identified as ROBINSON's girlfriend's residence. During the search, detectives located a white jewelry box hidden inside a water heater closet. The jewelry box contained a rope chain with a gold Jesus' face pendant and a gold cross. On that same day, your affiant met with Victim #2 who identified the items as belonging to him and taken on December 14, 2020.

27. Your affiant reviewed LAMAR's PBSO prisoner property receipt, dated December 27, 2020, that listed all his personal property from when he was arrested on December 16, 2020, in Georgia. The property receipt indicated that LAMAR had a yellow ring and yellow bracelet. These two items were removed from LAMAR's property and submitted to PBSO evidence. On February 25, 2022, your affiant met with Victim #2 and presented photographs of the jewelry recovered from LAMAR's personal property. Victim #2 confirmed the items within LAMAR's property were stolen from him on December 14, 2020.

28. On September 23, 2021, your affiant reviewed Southwest Airlines flights records for ROBINSON. According to the records, ROBINSON boarded flight #4131, departing Miami, Florida, on December 15, 2020, at 7:05 am. After connecting in Houston, Texas, ROBSINSON returned to Oakland, California.

## Conclusion

29. I submit that there is probable cause to believe AVILA, LAMAR and ROBINSON committed (i) Kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1), (ii) Conspiracy to Commit Kidnapping, in violation of Title 18, United States Code, Section 1201(c), (iii) Carjacking, in violation of Title 18, United States Code, Section 2119, (iv) Hobbs Act Robbery, in violation of Title 18, United States Code, Section 1951(a), and (v) Brandishing a

Firearm, that is, a Semiautomatic Assault Weapon, in Furtherance of a Crime of Violence, in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii) and (B)(i).

FURTHER YOUR AFFIANT SAITH NAUGHT.

Richard Silva,
Task Force Officer, ATF

Sworn to and attested to me by Affiant on this 3 day of March 2022, by Telephone (Facetime) per Fed. R. Crim. P.4(d) and 4.1

HON. BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

### CASE NO. 22-MJ-8071-BER

Defendant's Name: <u>Darwin Salgado AVILA</u>

| COUNT | VIOLATION | U.S. CODE | MAX. PENALTY |
|---|---|---|---|
|  | Kidnapping | 18 U.S.C. § 1201(a)(1) | Life imprisonment<br>$250,000 fine<br>5 years' supervised release<br>$100 Special Assessment |
|  | Conspiracy to Commit Kidnapping | 18 U.S.C. § 1201(c) | Life imprisonment<br>$250,000 fine<br>5 years' supervised release<br>$100 Special Assessment |
|  | Carjacking | 18 U.S.C. § 2119 | 15 years' imprisonment<br>$10,000,000 fine<br>3 years' supervised release<br>$100 Special Assessment |
|  | Hobbs Act Robbery | 18 U.S.C. § 1951(a) | 20 years' imprisonment<br>$250,000 fine<br>3 years' supervised release<br>$100 Special Assessment |
|  | Brandishing a Semiautomatic Assault Rifle in furtherance of a crime of violence. | 18 U.S.C. §§ 924(c)(1)(A)(ii) & (B)(i) | 10 years to life imprisonment to be served consecutive to any other sentence of imprisonment<br>$25000,000 fine<br>5 years' supervised release<br>$100 Special Assessment |

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

### CASE NO. 22-MJ-8071-BER

Defendant's Name: <u>Anthony LAMAR</u>

| COUNT | VIOLATION | U.S. CODE | MAX. PENALTY |
|---|---|---|---|
|  | Kidnapping | 18 U.S.C. § 1201(a)(1) | Life imprisonment<br>$250,000 fine<br>5 years' supervised release<br>$100 Special Assessment |
|  | Conspiracy to Commit Kidnapping | 18 U.S.C. § 1201(c) | Life imprisonment<br>$250,000 fine<br>5 years' supervised release<br>$100 Special Assessment |
|  | Carjacking | 18 U.S.C. § 2119 | 15 years' imprisonment<br>$10,000,000 fine<br>3 years' supervised release<br>$100 Special Assessment |
|  | Hobbs Act Robbery | 18 U.S.C. § 1951(a) | 20 years' imprisonment<br>$250,000 fine<br>3 years' supervised release<br>$100 Special Assessment |
|  | Brandishing a Semiautomatic Assault Rifle in furtherance of a crime of violence. | 18 U.S.C. §§ 924(c)(1)(A)(ii) & (B)(i) | 10 years to life imprisonment to be served consecutive to any other sentence of imprisonment<br>$25000,000 fine<br>5 years' supervised release<br>$100 Special Assessment |

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

### CASE NO. 22-MJ-8071-BER

**Defendant's Name:** <u>Rahsaan ROBINSON</u>

| COUNT | VIOLATION | U.S. CODE | MAX. PENALTY |
|---|---|---|---|
| | Kidnapping | 18 U.S.C. § 1201(a)(1) | Life imprisonment<br>$250,000 fine<br>5 years' supervised release<br>$100 Special Assessment |
| | Conspiracy to Commit Kidnapping | 18 U.S.C. § 1201(c) | Life imprisonment<br>$250,000 fine<br>5 years' supervised release<br>$100 Special Assessment |
| | Carjacking | 18 U.S.C. § 2119 | 15 years' imprisonment<br>$10,000,000 fine<br>3 years' supervised release<br>$100 Special Assessment |
| | Hobbs Act Robbery | 18 U.S.C. § 1951(a) | 20 years' imprisonment<br>$250,000 fine<br>3 years' supervised release<br>$100 Special Assessment |
| | Brandishing a Semiautomatic Assault Rifle in furtherance of a crime of violence. | 18 U.S.C. §§ 924(c)(1)(A)(ii) & (B)(i) | 10 years to life imprisonment to be served consecutive to any other sentence of imprisonment<br>$25000,000 fine<br>5 years' supervised release<br>$100 Special Assessment |